JARVIS against PRENTICE and another.

A, having, by his will, divided his estate into six equal parts, one of which he gave to his wife, devised the residue to his five children, and their heirs forever, to be for their own sole use and benefit, and for that purpose to be received and held in trust, by certain trustees ; and if necessary or beneficial, they might, with the consent of the heir or heirs, sell and convey, by deed, any real estate so held in trust, and invest it in other property, for the sole use of said heir or heirs; and the income and revenue of all property, thus held in trust by the trustees, they should pay over, as often as convenient, to said child or children, after deducting expenses ; and should take the receipts of the testator's sons and daughters therefor.  By the same will, it was further provided, that whenever, in the united and just opinion of said children and the trustees, the property devised could, with safety, be divided between said children, or their heirs, or any part of it, this might be done. After the death of A, C, the wife of B, and one of the five children of A, united with the other devisees, (one of whom was a minor,) and the trustees, in an application to the court of probate, for a partition of the estate thus devised among the devisees in severalty, which was ordered ; and distributors were appointed, who made partition accordingly, setting out, among other estate, a certain

parcel of land to *C.* *B* and *C* afterwards, in pursuance of an agreement or understanding between them, by a deed of indenture, conveyed the estate aparted to her, to *D*, in trust for the sole and separate use and benefit of *C* ; *D*, on his part, covenanting faithfully to perform the trust, and account with *C* for his doings in the premises. *E*, a creditor of *B*, claiming that *B* had a life-estate in said land, as tenant by the curtesy initiate, then levied his execution against *B* thereon. In an action of ejectment, brought by *E* against the tenants in possession, it was held, 1. that the portion given by the will of *A* to *C*, was given in trust for her sole and separate use ; 2. that the title of *C* was not changed, either by the proceedings in partition, or by the agreement between *B* and *C* and the subsequent conveyance to *D* in trust ; 3. that such conveyance was not void against the creditors of *B*, as being voluntary and fraudulent ; 4. that consequently, *B* had no title, legal or equitable, in the premises, and *E* took nothing by his levy.

New-London,
July, 1848.

Jarvis
*v.*
Prentice.

THIS was an action of ejectment, for one undivided half of a parcel of land, and a store thereon, lying on *Water* street, in the city of *Norwich.*

The cause was tried, on the general issue, at *Norwich, March* term, 1848, before *Church,* Ch. J.

The plaintiff claimed title to the demanded premises, by virtue of the levy of an execution in his favour against *Albert Smith.* The cause of action on which the judgment was rendered and the execution issued, was a promissory note, dated *November* 24th, 1842. The premises had belonged to the estate of *Elisha Tracy,* deceased ; and he was well seised thereof, at the time of his death, which took place in *April,* 1842.

The plaintiff claimed, that *Albert Smith* had a life estate in the premises, in right of his wife, *Lucy,* who was one of the daughters of said *Tracy;* and that there were children of the marriage, born alive, who could inherit the premises ; by reason of which *Smith* might be a tenant by the curtesy of the premises. In support of this claim, the plaintiff read in evidence the will of said *Tracy,* proved and established by the court of probate, on the 29th of *April,* 1842 ; the resignation of the executors therein named, of their trust as executors, dated *April* 30th, 1842 ; the petition of the heirs at law and devisees of said *Tracy,* for a partition of the estate, dated *February* 1st, 1843 ; the order of the court of probate thereon, appointing distributors on the estate, dated *June* 10th, 1843 ; the return of the distributors, with their doings under said order, dated *July* 10th, 1843 ; and the acceptance of such return, by the court.

*New-London*,
July, 1848.

Jarvis
*v.*
Prentice.

The testator, after making certain bequests to his sons *Elisha W. D.* and *William S.*, and having divided his estate, real and personal, into six parts, of which he gave one part to his wife *Lucy C.*, in her own right, proceeded as follows :

" All the rest and residue of my estate, both real and personal, that I own at the time of my decease, I give and devise to my five children, *William S. Tracy, Elizabeth D. Williams, Lucy H. Smith, Charlotte I. Tracy,* and *Elisha W. D. Tracy*, to them and their heirs, forever, to be for their own sole use and benefit, and to be equally divided into five equal parts for their benefit; and for that purpose, to be received and held in trust, by my beloved wife, *Lucy C.*, and my two nephews, *Phineas L. Tracy* of *Batavia* and *Albert H. Tracy* of *Buffalo ;* the said trustees to receive and hold the aforesaid five-sixths of my estate, hereby devised to my said five children ; and if necessary or beneficial, said trustees may, with the consent of the heir or heirs, sell and convey, by deed, any real estate so held in trust, and invest it in other property, for the sole use of said heir or heirs ; and the income and revenue of all property, thus held in trust, by the trustees aforesaid, they shall pay over, as often as convenient, to my said child or children, after deducting taxes, expenses and charges ; and are to take the receipts of my sons and my daughters therefor." [There were then some provisions regarding vacancies in the board of trustees.] " Each of my children aforesaid may, by will, devise the manner in which, at her or his decease, that portion of the estate belonging to said child shall be disposed of ; and the trust, on such decease, shall cease, on such part of said property ; and in case of the decease of any of my children, without a will, their part of said property shall go to their descendants, in case they leave any descendants ; if they do not leave any descendants, the property is to go to the heirs at law, in equal proportions, and subject to the conditions and trust provided in this will ; and in case any of my children should die before myself, and leave descendants born in wedlock, such descendants to receive said son's or daughter's share of said property ; and if there is not any such descendants as last described, such share is to be divided between my other children and their heirs, in the same manner and proportion, and subject to the same trust as respects my children, as is before provided." " And

it is further provided, that whenever, in the united and just <span style="float:right">*New-London,*</span>
opinion of my children and the trustees, the property here <span style="float:right">July, 1848.</span>
devised can, with safety, be divided between my children and <span style="float:right">Jarvis</span>
their heirs, or any part of it, the same may be done : my re- <span style="float:right">*v.*</span>
commendation is, one half of it, or about and not exceeding <span style="float:right">Prentice.</span>
ten thousand dollars, to each child, of real and personal es-
tate." "And I do hereby appoint my three trustees, *Lucy
C. Tracy*, *Phineas L. Tracy* and *Albert H. Tracy*, executors
of this my last will and testament." Dated the 8th day of
*October*, 1838.

By a codicil, dated *August* 20th, 1841, the testator provi-
ded as follows : " I permit and direct, that whenever my
youngest child shall become of lawful age, my children may,
by a unanimous consent and agreement, subscribed to in
writing, to be lodged and recorded in the probate office, (my
wife, if living, consenting thereto, with the same formalities,)
dissolve the trust provided for, in the aforesaid will and testa-
ment, either in whole or in part, as they may thus agree, and
divide the estate, so far as they may thus dissolve the trust.
In case of minor grand-children, being direct and legal heirs,
they may act by their guardians."

The petition to the court of probate of the children and
heirs at law of the testator and trustees named in the will,
stated, that it was the united and joint opinion of the children
and trustees, that the property so divided as aforesaid, should
then be divided between said children, and that it was their
interest that such division should be made. They therefore
prayed said court to order and direct so much of said estate,
so devised as aforesaid, as was within the jurisdiction of said
court, to be divided and distributed among said children, or
their heirs, according to the intent of said last will and testa-
ment of the deceased.

*Roger Huntington, William Williams* and *Jacob W.
Kinney* were thereupon appointed, by the court of probate,
distributors, to make, according to law, division and distribu-
tion of the estate of said deceased, in conformity to the pro-
visions of his last will and testament. These distributors,
being duly sworn, made divison and distribution of said es-
tate, including therein " to Mrs. *Lucy H. Smith*, daughter and
heir at law of the deceased, one undivided half of the store
and lot on *Water* street in *Norwich* city, 2500 dollars."

The plaintiff also read in evidence a deed of indenture from *Albert Smith* and wife to *Lyman Brewer*, in trust for her sole and separate use, dated the 27th of *August*, 1844. By this instrument, *Albert Smith* and *Lucy H. Smith*, after a recital of the matters above stated, conveyed to *Lyman Brewer*, his heirs and assigns, forever, certain real estate, late the property of said *Elisha Tracy*, and now the property of said *Lucy H.*, as his devisee and heir at law, including the demanded premises: " In trust that said trustee shall pay over the rents and profits of said property, so conveyed as aforesaid, to the sole and separate use of said *Lucy H. Smith ;* and upon the further trust, that said trustee shall and may sell and convey said land, or any part thereof, when said *Lucy H. Smith*, by writing under her hand and seal, shall direct, and shall make such disposition of the avails of said property, so sold, as said *Lucy H. Smith* shall, under her hand and seal, direct ; and upon the further trust to convey said property, or the avails of the same, if sold, to such other trustee or trustees, and for such other uses and purposes as the said *Lucy H. Smith* shall limit and appoint ; also, in general, upon the trust, that said trustee shall pay over the dividends, rents and profits, or other annual avails of said property, during the life-time of said *Lucy H. Smith*, for her sole, absolute, peculiar and separate use and benefit, or to such person or persons as she, by a note, instrument or other writing, under her hand and seal, notwithstanding her present coverture, shall direct and appoint ; and that said trustee, by suitable conveyances, shall grant, convey and transfer said property, above conveyed, to such person or persons as she, the said *Lucy H. Smith*, during her life-time, by any note or instrument in writing, under her hand and seal, may appoint, or to such person or persons as she shall, by her last will and testament, limit and appoint." *Brewer*, on his part, in the same instrument, covenanted with said *Albert Smith* and *Lucy H. Smith*, severally and not jointly, that he would faithfully perform and fulfill, at all times, all the trusts aforesaid, according to the true intent and meaning of these presents ; and further, that he would well and truly account, from time to time, with said *Lucy H. Smith*, her executors, administrators and assigns, of and for his doings, receipts and dividends and other proceedings in the

premises; and would, in all things, faithfully manage the
trust therein granted.

The plaintiff also read in evidence a deed of the demanded premises, from said *Smith* and wife and said *Brewer* to *William S. Tracy*, and also a deed from said *Tracy* to said *Brewer.*

The plaintiff claimed to have proved, that the defendants were in possession of the demanded premises, and that demand had been made by the plaintiff to be let into the possession thereof, as tenant in common; which the defendants had refused. The defendants denied that any such demand had been made.

The plaintiff claimed, and prayed the court to instruct the jury, that the will of *Elisha Tracy* did not create a trust; but that, aside from the specific devises and legacies therein mentioned, the residue of his estate was given to his children in fee; and that after the distribution of the estate, *Smith* had a life estate in the demanded premises. But the court charged the jury, that by said will a trust estate was created, and that the children of the testator had not thereby the legal estate devised to them by the will.

The plaintiff also claimed, and prayed the court to charge the jury, that if the will did create a trust, still if the trustees had declined to accept the trust, and no others had been appointed in their place, the trust would fail, and the estate pass to the devisees, stripped of the trust. And the plaintiff claimed, that it appeared from the documents in evidence, or some of them, that the trustees named in the will, had not accepted the trust. The court, on this point, did not charge the jury, as claimed by the plaintiff; remarking, that from another view of the case, taken by the court, and upon which the court did charge, it did not become necessary to determine the question whether the trustees had accepted the trust, or not.

The plaintiff further claimed, and prayed the court to charge the jury, that if the will of *Elisha Tracy* did create a trust, and if the trust had been accepted by the trustees therein named; yet after the application of those interested, to the court of probate, for a distribution of said estate, and after the distribution was made, the trust thereby became dissolved, and Mrs. *Smith* thereupon became seised in fee, in severalty, of the portion distributed to her, free from any trust; and

*New-London,*
*July, 1848.*
_____

Jarvis
*v.*
Prentice.

that, as *Albert Smith*, her husband, was much indebted and insolvent, when he and his wife executed said deed of trust to *Lyman Brewer*, that deed was fraudulent and void, as against the plaintiff and the other creditors of *Smith.*

The defendants claimed to have proved, that before and at the time when said application was made to the court of probate for a distribution, and when the distribution was made, it was agreed by and between *Albert Smith* and his wife, that notwithstanding such distribution, the share of said estate, distributed to her in severalty, should be placed under a trust for her sole and separate use, according to the will of her father; and that said deed of trust to said *Brewer* was executed, by *Smith* and his wife, *bona fide*, and with the intent and for the purpose of carrying out said agreement, and not to defraud or delay the creditors of *Smith.*

The court did not charge the jury as the plaintiff claimed, but charged them, *pro forma*, as follows:

1. That although, by the will of *Elisha Tracy*, a trust estate was created, as the defendants claimed, and by reason of the application to the court of probate, and the distribution of said estate to the devisees in severalty, according to the provisions of the will, the trust was dissolved; yet if the deed of *Albert Smith* and wife to *Brewer*, was executed, as the defendants claimed, in consideration and by reason of an agreement and understanding between *Smith* and his wife, at or before said application for distribution to the court of probate, and for the sole purpose of carrying out said agreement and understanding, so that the share of said estate distributed to Mrs. *Smith* in severalty, should be placed under a trust, for her sole and separate use, then the deed to *Brewer* was good against the creditors of *Smith*, and the plaintiff acquired no title, by virtue of the levy of his execution.

2. That if the deed of trust from *Smith* and his wife to *Brewer* was not made in pursuance of and to carry out an agreement and understanding between *Smith* and his wife, as aforesaid, but by reason of any agreement, understanding or purpose between *Smith* and his wife, or otherwise, after the application for distribution of said estate, and after the distribution was made, said deed would be inoperative and void, as to the creditors of *Smith.*

3. That if said deed was made with an actual intent to de-

fraud or delay the creditors of said *Smith*, it would be void as to his creditors.

The jury returned a verdict in favour of the defendants; and the plaintiff moved for a new trial for a mis-direction.

*McCurdy* and *Foster*, in support of the motion, contended, 1. That no trust was created, by the will of *E. Tracy*. The estate is given to the children and their heirs and assigns forever. It was an estate in fee, subject to a temporary controul of certain persons, for particular purposes. 1 *Sw. Dig.* 77. 227. 4 *Kent's Com.* 299. 309, 10. 314. 316. *Bryan* v. *Bradley*, 16 *Conn. R.* 488. *Conklin* v. *Edgerton*, 21 *Wend.* 430. If this be so, it follows, that upon the facts stated in the motion, *Albert Smith* was tenant by the curtesy initiate; and had an estate for life.

2. That if a trust was created by the will, it was never accepted, and the whole provision fell to the ground. It was a *personal confidence*, and could not be revived, by the court of probate, nor even by a court of chancery. 4 *Kent's Com.* 320, 1. 324. It could form no consideration for a subsequent conveyance.

3. That if the will created a trust, provision was made, in the same instrument, for disposing of that trust; and this was done. See the application to the court of probate, *February* 1st, 1843; the order of court thereon, *June* 10th, 1843; and the return of the distributors, *July* 10th, 1843. From the latter date to the 27th of *August*, 1844, when the indenture with *Brewer* was executed, *Smith* was seised of this property, *jure uxoris*, clear of any trust whatever. *Litt.* § 35. *Co. Litt.* 296. *Bissell on Estates for Life*, 35. & seq. 2 *Kent's Com.* 130. *Roper on Husband and Wife*, 3, 4, 5. *Griswold* v. *Penniman*, 2 *Conn. R.* 565. Had *Smith*, during this period, conveyed away this property for his life, such conveyance would undoubtedly have been good, except as against his creditors. So, an attachment, by a creditor, during this period, must inevitably have held his life estate. *Wickes* v. *Clarke*, 8 *Paige* 161.

4. That the charge, as to the validity of the deed to *Brewer*, was erroneous. The only ground on which it is sought to sustain this conveyance to *Brewer*, is, that prior to, or at the time of, the distribution, it was agreed between *Smith*

*New-London,*  and his wife, that such a conveyance should be made ; and
*July, 1848.*  this is claimed to be a good consideration for the conveyance,

Jarvis
*v.*
Prentice.
even as against creditors.

In the first place, an agreement between husband and wife,
is wholly void.   There is, in contemplation of law, but one
contracting party ; and no such contract can be enforced.
*Dibble* v. *Hutton,* 1 *Day* 221.   *Butler* v. *Buckingham,* 5 *Day*
492.   *Whittlesey* v. *McMahon,* 10 *Conn. R.* 137.   *Baldwin*
v. *Carter,* 17 *Conn. R.* 208.   *Fourth Ecclesiastical Society
in Middletown* v. *Mather,* 15 *Conn. R.* 587. 599.   *Watrous*
v. *Chalker,* 7 *Conn. R.* 224. 228.   *Morgan* v. *Thames Bank,*
14 *Conn. R.* 99.

Secondly, this agreement was not in writing.   Indeed, it
was scarcely an agreement at all, but is spoken of as " an
agreement *or understanding.*"   Now, a parol agreement,
made before marriage even, between husband and wife, re-
garding her estate, is void, and cannot be enforced.   *Reade,*
admr. v. *Livingston,* 3 *Johns. Ch. R.* 481.   1 *Roper on Hus-
band and Wife,* 308, 9.   *Shepard* v. *Shepard,* 7 *Johns. Ch.
R.* 60.   *A fortiori,* will a parol agreement made after mar-
riage, be void.

Thirdly, this agreement was void, by the statute of frauds.
It violates two clauses of the statute : it concerns lands ; and
it was not to have been performed within a year.

Fourthly, the trust was to be discharged, not upon an
agreement of the persons named, but upon their *opinion* of
its propriety.   The expression of an opinion, was no consider-
ation for a deed creating a new trust, not contemplated by
the will, but in contravention of it.

Fifthly, the transaction was equivalent to fraud.   The life
estate stood in *Smith,* from *April* 1842, to *August* 1844 ; and
during that period, he was held out to the world as the owner.

*Strong,* contra, contended, 1. That by the will of *E. Tra-
cy,* this property was vested in trustees, so that *Albert Smith,*
as the husband of *Lucy H. Smith,* had no legal interest in it,
when the debt of the plaintiff was contracted.   He there-
fore could not complain, that after his debt was contracted,
the trust was dissolved, and another created, before the levy
of his execution.

2. That the legal estate which was vested in *Smith,* upon

the dissolution of the trust under the will, was, previous to the plaintiff's levy, transferred to and vested in *Brewer*, as trustee. Of course, the plaintiff can have no claim to recover, except on the ground, that *Smith's* deed was fraudulent as against this creditor; but such fraud, the jury have negatived, by their verdict.

*New-London,*
July, 1848.

Jarvis
*v.*
Prentice.

3. That the court cannot, as a matter of law, in the absence of any proof of actual fraud, infer, that this conveyance was fraudulent; especially when, by the statute of 1845, the legislature have declared, that the property of the wife thus situated, shall not be subject to be taken for the husband's debts.

ELLSWORTH, J. The plaintiff claims title, by the levy of an execution against *Albert Smith*, the husband of *Lucy H. Smith*. *Smith* and his wife conveyed away the land to a trustee for her sole and exclusive use, at a time, prior to the plaintiff's levy. The validity of this deed the defendants deny, claiming that it is not founded in an adequate consideration, notwithstanding the agreement between *Smith* and his wife. They insist, that the husband had a life estate by curtesy initiate, which he could not give away, to the prejudice of his creditors, and which, therefore, the plaintiff has taken on execution.

We have no doubt, that, by the will of Mr. *Tracy*, the portion given to Mrs. *Smith*, is given *in trust.* It is not the case of a mere power in the persons who are expected to act as trustees, as has been contended; but a case of trust, accompanied with power to sell, to re-invest, &c.

If the trust left the equitable interest in Mrs. *Smith*, without any further direction, Mr. *Smith* might take and hold by curtesy initiate; for the husband has curtesy in an equitable, as much as in a legal estate, belonging to the wife. But this will goes further. It gives to the wife her portion in trust for her sole and exclusive use, as we understand the will; and therefore, until she does some act to put an end to her separate title, the estate will continue to be hers in equity; and wherever the title may be, for the time being, it will be made subservient to the trust; nor will there be any real interest in the husband, which can be taken by his creditors.

The testator, after giving certain legacies, directs his es-

*New-London,*
*July, 1848.*
————
Jarvis
*v.*
Prentice.

tate to be divided into six parts. One part is given to Mrs. *Smith,* by her married name, " to be for her own and sole use ;" and further on in the will, he says, the trustees shall " receive and hold the aforesaid portions, (including other daughters',) with power to sell and convey the same, and invest the avails in other property for the sole use of the heirs ; and the income and revenue they shall receive and pay over, as often as is convenient, to said child or children, and take receipts of my sons and my daughters therefor." This is in substance the language of the will. Now, how can Mrs. *Smith* have the *sole* use and benefit of her father's bounty, if her husband, or his creditors, can take it from her ? How can the trustees sell and convey it away, and re-invest the avails, and pay the income to Mrs. *Smith,* from time to time ? And they are to have *her* individual receipt.

The cases in the books, showing the construction of such language as we have here, leave no doubt, that the daughters of the testator took their shares, to their *sole* and *exclusive* use. The general rule is thus laid down, by *Clancy,* in his treatise of *Husband and Wife, p.* 262. " But although equity so far qualifies the law, as to permit a *feme covert* to take and enjoy property to her separate use, when it is given to her with that intent ; yet such a trust should be very distinctly expressed, before the court will establish it against the rights of the husband. It seems, however, to be immaterial in what form of phrase a trust of that nature is described : technical language is not necessary, as all that is required, is, that the intention of the gift should appear manifestly to be for the wife's separate enjoyment. Such a claim on the part of a married woman, being against common right, the instrument under which it is made, must clearly speak the donor's intention to bar the husband, else it cannot be allowed. It will appear from the cases, that the strongest evidence of intended generosity and of bounty towards the wife, will not be sufficient to give her a separate estate, unless, in addition, language be used, by the donor, clearly expressing the exclusion of the husband, or else directions be given with respect to the enjoyment of the gift wholly incompatible with any dominion by the husband." The words to the " sole and separate use of the wife," have always been held sufficient to create in her an exclusive estate. In *Kirk* v. *Paulin,* 7 *Vin.*

New-London,
July, 1848.

Jarvis
v.
Prentice.

*Abr.* 95. the words " to be at her disposal," were held to be sufficient. So in *Tyrrell* v. *Hope*, 2 *Atk.* 558., the words " she should enjoy and receive the issues and profits of one moiety of the estate, then in the possession of her mother, after the decease of her mother," were held sufficient. Lord *Hardwicke* said, that the will could bear no other construction, although the words " separate use," were not to be found in it ; for, he remarks, to what end should she receive the rents and profits, if they become the property of the husband, the next moment ; and he added, that the word " enjoy" was very strong to imply separate use. So in *Darley* v. *Darley*, 3 *Atk.* 399. the same judge states it to be his opinion, that if an estate be given to a husband " for the livelihood of his wife," this ought to be considered a trust for the exclusive use of the wife. So in *Woodman* v. *Horsley*, cited 3 *Bro. Ch. Ca.* 383., the words "the wife's receipt shall be a sufficient discharge, notwithstanding her coverture," were held to have the same meaning. So in *Lee* v. *Prieaux*, 3 *Bro. Ch. Ca.* 381., the words " that her receipt should be a sufficient discharge to the executors," without the addition of the words " notwithstanding her coverture," were held to be equivalent to saying " to her sole and separate use." In *Dixon* v. *Olmius*, 2 *Cox's R.* 414., the testator directed, " that the said bonds and mortgages be delivered up to my said niece, *Lady Waltham*, whenever she shall demand or require the same ; and it was held, by Lord *Loughborough*, that as the securities were to be given to Lady *Waltham*, on her demand, Lord *Waltham* could not have obtained them from the executors, without a demand made by her, which gave her a dominion over them ; and they must therefore be considered as given to her separate use.

The appointment of trustees for the use of a married woman, furnishes no decisive evidence that the donor intended the gift should be to her separate and exclusive use. This was held, by the Master of the Rolls, in *Lumb* v. *Milnes*, 5 *Ves.* 517.

There has been some contrariety as to the construction and effect of certain words, but none as to such words and provisions as are found in Mr. *Tracy's* will. You may see *Kirk* v. *Paulin*, 7 *Vin. Abr.* 96. *Roberts* v. *Spicer*, 5 *Mad.* 491. *Pritchard* v. *Ames*, 1 *Turn.* 222. *Palmer* v. *Trevor*, 1 *Vern.*

261.    *Brown* v. *Clark,* 3 *Ves.* 166.    *Lumb* v. *Milnes,* 5 *Ves.*
517.    *Jacobs and Wife* v. *Amyatt,* 1 *Mad.* 376. note.    *Hartley* v. *Hurle,* 5 *Ves.* 540.

If we are correct in so construing the will of Mr. *Tracy,* as to give to Mrs. *Smith* her portion for her sole and separate use, the next question is, has she done anything to put an end to her title?    Has she conferred on her husband a legal title? For without a legal title, derived through the husband, to the plaintiff, it is certain the plaintiff cannot recover in this action. She has done nothing of the kind, unless such is the effect of her uniting with her husband and others, in applying to the court of probate for a partition of the estate.    It is quite certain this partition is not made under, nor according to, the provisions of the codicil; nor is it, by any means clear, that it has any effect as a division under the provisions of the body of the will; for one of the children of Mr. *Tracy* was a minor, and not qualified to do a legal act; though possibly this is not necessary, as it may be said, the power to act is given to the children as they are.    However this may be, we do not think Mrs. *Smith* has, in fact, changed, or designed to change, the character of her property.    She might be willing to have the estate divided and settled; but it by no means follows, that she has given up her sole and exclusive property. This would require a clear intention, and an unambiguous act.    We see nothing of the kind in the proceedings in probate; but rather a contrary intention, proved by the agreement between Mr. and Mrs. *Smith,* at the time of the partition.    This is precisely the effect we attach to the agreement. It was a part of the *res gestæ;* a clear expression of hers, not to give up her property to her husband.    We do not so much regard the agreement as a valid executory contract between husband and wife, (as such a contract may be obnoxious to the doctrine of *Hutton* v. *Dibble,* 1 *Day,* 221., which decision we do not intend to impugn,) as we do an expression accompanying and constituting a part of the transaction itself.

If then, Mrs. *Smith* has not done any act to change her right to her property, why was not the deed, which is now assailed as voluntary and fraudulent against creditors, just and legal, and in furtherance of the donor's intention?    If the law has thrown the legal title upon *Smith,* because he married

*New-London*,
July, 1848.

Jarvis
*v.*
Prentice.

the heir of Mr. *Tracy*, then the same title properly passed from him, by said deed, which was given before the levy of the plaintiff's execution.

This view of the case renders it unnecessary to examine many of the questions discussed at the bar: as what is the effect of a contract between husband and wife; did the trustees ever take, and do they now hold, the legal title; whether there has been a partition of the estate under the will; and if so, what effect this had in vesting an interest in Mr. *Smith*, by curtesy initiate, which creditors could take. These questions become unimportant, if Mrs. *Smith*, at first, took, and still has, an interest, which is sole and exclusive in her, as we have decided.

In this opinion the other Judges concurred.

New trial not to be granted.